UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHIPPEWA COUNTY WAR
MEMORIAL HOSPITAL,

        Plaintiff,

v.                                Case No. 2:16-cv-192
                                HON.  GORDON J. QUIST
MICHIGAN NURSES ASSOCIATION,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

The matter before the Court arises from an arbitration award between Chippewa County War Memorial Hospital ("WMH") and Michigan Nurses Association ("MNA").  WMH argues that the arbitration award should be vacated because (1) the arbitrator ignored pertinent provisions and failed to apply the plain meaning of the collective bargaining agreement ("CBA"); and (2) the enforcement of the arbitration award would violate public policy.  MNA argues that the arbitration award should be enforced and also requests attorney's fees and costs associated with this lawsuit.  Both parties have filed for summary judgment. The undersigned heard oral argument on January 18, 2017.  This matter is now ready for decision.

The facts are largely undisputed in this case.  The initial dispute arose from the elimination of the Case Manager II/Utilization Review Nurse position within the Behavioral Health Services.[1]  Prior to its elimination, the position was held by a bargaining unit member for at least the past six years.  According to MNA, the duties of this position included:

---

[1] Although the arbitrator described the position change as a transfer in his arbitration decision, the parties agreed during oral argument that whether the position was eliminated or transferred has no significance to this case.

> [C]ensus, what insurance would be available and provided, Medicare, verify insurance, review information with payer, get authentication numbers, communicate with insurance companies, how patients are doing on the unit, whether patients are taking medications, whether the patient is at the BHC voluntarily or not, sit in on treatment teams, explain lab work, answering questions, use dry erase board to keep track of reviews, and do appeals concerning insurance situations.

PageID.27.

On July 17, 2015, WMH eliminated the Case Manager II/Utilization Review Nurse position. WMH asserts that it eliminated the position to save costs and to address a nursing shortage. At the time, this position was held by a bargaining unit member—Jill Alexander, RN. After eliminating the position, WMH notified Ms. Alexander of her bumping rights. Ms. Alexander subsequently bumped into a day shift nurse position. The previous day shift nurse was then promoted to a nurse manager position; however, the nurse manager position is not a bargaining unit position.

On July 20, 2015, WMH posted an opening for a BHC Insurance/Payment Clerk position. This new position combined the duties of the receptionist for the Blue Water Behavioral Health Clinic with the duties of the previous Case Manager II/Utilization Review Nurse position. The position was subsequently filled with the receptionist who was already working at the Blue Water Behavioral Health Clinic. The person who filled the position is not an RN and not a bargaining unit member.

On July 27, 2015, MNA filed a grievance against WMH relating to the elimination of the Case Manager II/Utilization Review Nurse position. The parties stipulated that the arbitrator should decide the following issue:

> Did the Employer violate the CBA and/or the National Labor Relations Act by unilaterally transferring the work performed by the Behavior Health Center's Case Manager II/Utilization Review

-2-

>Nurse to a non-bargaining unit position which resulted in the loss of an MNA bargaining unit position?

PageID.23.  The arbitrator held a hearing where both parties presented evidence and testimony on May 4, 2016.  After the hearing, the parties submitted post-hearing briefs to the arbitrator.

On July 7, 2016, the arbitrator issued a twenty-seven page decision.  The arbitrator found that WMH's transfer of unit work from the Case Manager II/Utilization Review Nurse position to a non-bargaining unit position violated the CBA.  In his decision, the arbitrator cited several provisions of the CBA, including:

### Article 4.0-Rights and Responsibilities

>4.1 – The Union recognizes and agrees that all management rights, powers, authority and functions, whether heretofore or hereafter exercised, and regardless of the frequency or infrequency of their exercise, shall remain vested, exclusively in the Hospital. It is expressly recognized that such rights, powers, authority and functions include, but are by no means whatever limited to, the full and exclusive control, management and operation of the Hospital; the determination of the scope of its activities, services to be provided, and methods pertaining hereto, the relocation of such services and other business activities and operations; the material and goods to be acquired or utilized, and the equipment and machinery to be utilized, schedules of work and standards; the right to schedule, change eliminate and require overtime work; the right to establish, change, combine or eliminate jobs, positions, and job classifications, as well as departments, sections and units; the right to establish wage rates for new or changed jobs or positions; the right to reasonably accommodate a disabled employee, the right to introduce new or improved procedures, methods, processes, facilities, fixtures and equipment or make technological changes; the right to establish, maintain, change or enforce operations procedures and policies; the right to maintain order and efficiency; the right to establish, maintain or change housekeeping standards; and the right to make, change or enforce safety and security rules, rules of conduct, and work rules.
>
>It is the intention of the Hospital and the Union that the rights, powers, authority and functions referred to herein shall remain exclusively vested in the Hospital except insofar as specifically surrendered or limited by express provisions of this Agreement.

### Article 8.0-Role of the Nurse and Associated Competency Levels

8.2 – Both parties agree that the Registered Nurse, as provided in the Michigan Public Health Code, must and shall have authority commensurate with her responsibility for directing, teaching and supervising of less skilled personnel in carrying out delegated nursing activities. The Registered Nurse has the responsibility for assessment, planning, implementing and evaluating nursing care, including patient teaching and coordination of services. The employer has the responsibility to assist the Registered Nurse in fulfilling these responsibilities. The supervisory duties of bargaining unit employees referenced in this paragraph will not be considered for the purpose of excluding them from the bargaining unit.

### Article 48-Use of Nonbargaining Unit Members

RNs are recognized to be the direct patient care provider for this Hospital. Non-bargaining unit members shall not be used to provide direct patient care on a regular basis as part of the master schedule. Non-bargaining unit personnel will not be used for the purpose of eroding the bargaining unit. It is the goal of the Hospital to not use non-bargaining unit members to provide direct patient care.

Nothing in this Agreement shall be construed to prohibit non-bargaining unit personnel from performing bargaining unit work in cases of emergency, training, trouble-shooting, in the absence of bargaining unit employees, or in cases where the work has routinely been performed by non-bargaining unit employees of the Hospital.

Non-bargaining unit member RNs such as Nursing Directors, Supervisors, etc. may be scheduled one shift per month in order to Maintain Nursing competency in a specific unit. The non-bargaining unit members shall not displace any bargaining unit member in terms of their schedule and/or FTE hours. Non-bargaining unit members shall be the first to be ROM'ed.

PageID.24-25.

After discussing both parties' arguments, the arbitrator concluded that "the transfer of unit work from the Case Manager [II]/Utilization Review Nurse to a non-bargaining unit position resulted in the loss of an MNA bargaining unit position in violation Art. 48." PageID.38. The arbitrator reasoned that Article 4 of the CBA, which provided that WMH has the right to

-4-

establish, change, combine, and eliminate jobs, was limited by the final sentence in that provision which stated, "except insofar as specifically surrendered or limited by express provisions of this Agreement." The arbitrator next found that Article 48 limited WMH's management rights in Article 4 because Article 48 states: "Non-bargaining unit personnel will not be used for the purpose of eroding the bargaining unit." The arbitrator used the New Oxford American Dictionary to define "erode" as "gradually destroy or be gradually destroyed" and to define "purpose" as "the reason for which something is done or created or for which something exists." PageID.39. The arbitrator found that the purpose or reason for the creation of the new position was to replace the Case Manager II/Utilization Review Nurse position. Based on this analysis, the arbitrator found that the WMH's elimination of the Case Manager/Utilization Review Nurse position violated the CBA.

Judicial review of an arbitration award is extremely limited. *Truck Drivers Local No. 164 v. Allied Waste Systems*, 512 F.3d 211, 216 (6th Cir. 2008). "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (citation omitted). "[I]f an 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision.'" *Id.* (quoting *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)). When the parties contract to have an arbitrator settle disputes between them rather than a judge, the arbitration award is unenforceable "only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice.'" *Id.* (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

In *Michigan Family Resources v. Service Employees Int'l Union*, 475 F.3d 746, 753 (6th Cir. 2007), the Sixth Circuit further limited the scope of review for arbitration awards to three questions of "procedural aberration":

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration?
>
> Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award?
>
> And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"?

*Id.* "So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made serious, improvident or silly errors in resolving the merits of the dispute." *Id.* (internal quotations omitted). "It will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will presume that the arbitrator is doing just that." *Id.*

This case focuses on the third question of the *Michigan Family Resources* test— whether the arbitrator was arguably construing or applying the contract when he resolved legal or factual disputes. Under the "arguably construing" prong, the courts will vacate "only the most egregious awards." *Id.* WMH argues that the arbitration award should be vacated because the arbitrator ignored pertinent provisions and failed to apply the plain meaning of the CBA. First, WMH contends that the arbitrator ignored Article 4 of the CBA. Article 4 provides that WMH retained the right to establish, change, combine, and eliminate jobs. However, the arbitrator did not ignore this provision. Instead, the arbitrator found that Article 4 contained a provision that allowed WMH's management rights to be limited by other provisions in the CBA. The arbitrator then found that Article 48 limited WMH's management rights in Article 4.

Second, WMH argues that the arbitrator ignored Article 8 of the CBA. Article 8 provides the role and responsibilities of the nurses. Although the arbitrator cited a portion of Article 8, he did not include the entire provision in his decision. Specifically, WMH argues that the arbitrator should have considered the sentence, "Registered Nurses will normally only assume those functions identified as the practice of nursing." PageID.331. According to WMH, the position did not involve any bargaining work because the position did not perform the "practice of nursing." In his decision, the arbitrator expressly found that the position involved bargaining unit work. The arbitrator's finding is consistent with MNA's view that the position provided "direct patient care." PageID.27. Furthermore, the sentence that WMH refers to in Article 8 is also limited by the word "normally." It is possible that this position presents an exception to the normal rule because, as the arbitrator noted, the position was held by a registered nurse for at least the past six years. PageID.26.

Third, WMH argues that the arbitrator failed to consider the entire context of Article 48. Specifically, WMH argues that the arbitrator took the sentence, "Non-bargaining unit personnel will not be used for the purpose of eroding the bargaining unit," out of context. The other three sentences in the same paragraph apply to situations involving direct patient care. WMH argues that because the position did not involve any direct patient care, the arbitrator should not have applied this provision to this case. Assuming that the sentence applies only when direct patient care is involved, MNA argued at the hearing that the position did involve direct patient care. PageID.27. Thus, although the arbitrator never expressly stated whether this position involved direct patient care, it is certainly conceivable that he agreed with MNA's view. More importantly, the arbitrator determined that the sentence in Article 48 applied to this case based on his interpretation of the CBA.

Fourth, WMH argues that the arbitrator failed to apply the plain meaning of the words "purpose" and "erode." WMH states that erosion could not have occurred because the bargaining unit has actually increased in size (based on other hires) and the nurse who left the bargaining unit elected to be promoted outside the bargaining unit. In his decision, the arbitrator found that "the purpose or reason for the creation of the insurance/payment clerk position was to replace the Case Manager II/Utilization Review Nurse position." PageID.18. The arbitrator also stated:

> The Case Manager II/Utilization Review Nurse job duties were bargaining unit job duties. There is no evidence that the Case Manager II/Utilization Review Nurse duties had been previously performed by non-unit employees. Substantially all of the Case Manager II/Utilization Review Nurse duties were assumed by the non-unit new Insurance/Payment Clerk position. The elimination of the Case Manager II/Utilization Review Nurse position from the unit resulted in "eroding the bargaining unit . . . ."

PageID.40. Although it may have been possible for the arbitrator to conclude that eliminating the position was not for the purpose of eroding the bargaining unit, the arbitrator was arguably construing and applying the CBA to the facts. Therefore, in the opinion of the undersigned, the arbitrator did not ignore pertinent provisions or fail to apply the plain meaning of the CBA. Instead, the arbitrator's errors, if any exist, arose while he was arguably construing and applying the CBA.

In addition to the *Michigan Family Resources* test, the Supreme Court has also found that the courts may not enforce an arbitration award that is contrary to public policy. *See United Paperworkers v. Misco, Inc.*, 484 U.S. 29, 42 (1987). However, in order to vacate the arbitration award on public policy grounds, the public policy must be "'explicit,' 'well defined,' and 'dominant.'" *Eastern Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000). Moreover, the public policy must "ascertained by reference to the laws and legal

precedents and not from general considerations of supposed public interests." *Id.* (citation omitted).

Here, WMH states that the public policy interest at stake is the health and welfare in patients and that "[i]t would certainly violate such interest to allow a nurse to indefinitely perform non-nursing clerical duties, not contemplated as part of her role pursuant to the CBA, when there is a nursing shortage and her direct care services are crucially needed." PageID.333. To support its argument, WMH cites *Russell Memorial Hospital Ass'n. v. United Steelworkers of Am.*, 720 F. Supp. 583, (E.D. Mich. 1989). In that case, the hospital discharged a nurse for negligence in administering medication. *Id.* at 584. The arbitrator reinstated the nurse to same position based on the hospital violating the collective bargaining agreement. *Id.* at 585. The court vacated the arbitration award because it determined that the reinstatement of the nurse "would directly conflict with Michigan's established public policy of ensuring the delivery of safe and competent nursing." *Id.* at 587. The court reasoned that the arbitrator found that the nurse had "a propensity for misconduct" and that her repeated insubordination and negligent failure to administer medication were "extremely serious." *Id.*

This case is easily distinguishable from *Russell Memorial Hospital Ass'n* because the arbitration award does not violate "Michigan's established public policy of ensuring delivery of safe and competent nursing." Here, the arbitration award does not reinstate a nurse who has demonstrated incompetence and poses a risk to the hospital's patients because she cannot correctly administer medication. In the opinion of the undersigned, WMH does not meet the standard of showing that enforcing this arbitration award would violate explicit, well defined, and dominant public policy.

The final issue in this case is whether the Court should award attorney's fees and costs to MNA. "Under the American Rule[,] it is well established that attorney's fees 'are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.'" *Summit Valley Industries v. United Brotherhood. of Carpenters & Joiners*, 456 U.S. 717, 721 (1982) (citation omitted). Although the Labor-Management Relations Act does not contain a fee-shifting provision, courts may award attorney's fees and costs against a party who pursues a lawsuit "without justification" or in "bad faith." *Knollwood Cemetery Assoc. v. United Steel Workers*, 789 F.2d 367, 370-71 (6th Cir. 1986); s*ee also Laborer's Pension Trust v. Lange*, 825 F. Supp. 171, 177 (E.D. Mich. 1993) ("When a refusal to abide by an arbitration decision is without justification and judicial enforcement is necessary, the court should award the party seeking enforcement reasonable costs and attorney fees"). To determine whether a lawsuit was brought in bad faith or without justification, the courts consider whether a reasonable attorney would have thought that the suit had any possible merit. *See Dreis & Krump Mfg. Co. v. International Ass'n of Machinists & Aerospace Workers*, 802 F.2d 247, 249 (7th Cir. 1986).

In the opinion of the undersigned, no reasonable attorney could have thought that the challenge to the arbitration award in this case had any merit. As described above, the Sixth Circuit has limited the scope of review of arbitration awards to rare cases and will vacate only the most egregious awards. *Michigan Family Resources*, 475 F.3d at 753. This case does not represent one of those rare cases. WMH agreed to arbitrate the issue in this case. After conducting a hearing and reading post-hearing briefs from the parties, the arbitrator issued a thorough, twenty-seven page decision. WMH argued that the arbitrator failed to consider several provisions of the CBA that the arbitrator actually cited in his decision. Moreover, WMH complained that the arbitrator failed to apply the plain language of certain terms that he actually defined in his decision. It is

apparent that WMH was attempting to relitigate the merits of the case because it disagreed with the arbitrator's interpretation of the CBA.  WMH should have known that this case was brought without justification.[2]  Therefore, in the opinion of the undersigned, MNA should be awarded attorney's fees and costs.[3]

Accordingly, it is recommended that WMH's motion for summary judgment (ECF No. 13) be denied.  It is further recommended that MNA's cross motion for summary judgment (ECF No. 11) be granted.

Dated:  January 31, 2017

  /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

---

[2] It should be noted that this is the second time that WMH filed a lawsuit against MNA challenging an arbitration award. *See Chippewa County War Memorial Hospital v. Michigan Nurses Ass'n*, No. 2:11-cv-10 (W.D. Mich. Sept. 7, 2011). In that case, this Court also awarded attorney's fees and costs.

[3] During the hearing, MNA requested that attorney's fees and costs also be imposed on the law firm representing MNA. In rare cases, the courts have the power to impose attorney's fees and costs as a sanction against law firms. *See BDT Products v. Lexmark Int'l*, 602 F.3d 742 (6th Cir. 2010).  However, in the opinion of the undersigned, this case does not represent a situation where the law firm needs to be sanctioned.